UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUMBER JACK BUILDING CENTERS,
          Petitioner,

                                                          Case No. 07cv12210
                                                          HON. ANNA DIGGS TAYLOR
v.

RICHARD C. ALEXANDER, Director of
Industry Operations, Detroit Field Division,
Bureau of Alcohol, Tobacco, Firearms and
Explosives,
          Respondent.
_____/

## MEMORANDUM OPINION AND ORDER

Petitioner has filed for judicial review of the decision by Respondent to revoke Petitioner's Federal Firearms License (hereinafter "FFL") because it was determined that Petitioner willfully violated provisions of the Gun Control Act of 1968 ( hereinafter "GCA"), 18 U.S.C. §921, *et seq*., and implementing regulations. Petitioner challenges the decision on a number of bases, specifically, that it did not commit a number of the cited violations, that it did not violate the GCA, and it did not do so "willfully." Before this court is Respondent's motion for summary judgment seeking affirmation of the decision to revoke Petitioner's FFL. For the reasons explained more fully herein, the Court finds that the decision to revoke Petitioner's FFL was authorized and the decision is affirmed.

### I.
*Factual Background*

Petitioner holds a federal license to engage in the business of dealing firearms. The ATF is the agency responsible for enforcement of the GCA. The GCA and all enabling regulations requires

1

that all federal firearms licensees comply with certain record keeping requirements and authorizes periodic review and inspection of such records by appropriate authorities. See 18 U.S.C. §923(g)(1)(B).

Petitioner's first compliance inspection was conducted in April 1985 by ATF Inspector Arthur Yarbrough. Yarbrough noted one violation, failure to maintain a record of ammunition dispositions, but did not execute or issue a Report of Violations form. He also noted that the bound book (the book required to identify the disposition of each firearm which enters or leaves the dealer's inventory) was not in proper form. Yarbrough reviewed the pertinent regulations with the store manager and established the acquisition and disposition record (hereinafter "A & D Record") in proper format. Administrative Record ("A.R.") at 180-181.

A second compliance inspection was conducted by ATF Inspector Debra Satkowiak in December 1995. As a result of that inspection, Inspector Satkowiak cited Petitioner for four violations of the GCA implementing regulations on Forms 5030.5. The cited violations were as follows: (1) Failure to consistently record all required information in the A & D Record, including the address or FFL# of the transferor, the type of firearm (caliber or gauge), and the date of acquisition; (2) Failure to maintain ATF Forms 4473, Firearms Transaction Records, in any consistent manner, i.e. alphabetical, chronological, or numerical by form number; (3) Failure to accurately and completely execute at least 100 ATF Forms 4473; and (4) failure to timely record firearm disposition information in the A & D book (Petitioner was unable to account for 12 firearms that had left its inventory). A.R. at 150-153, 215-222.

At the conclusion of the inspection, a closing conference was held on December 6, 1995. The closing conference was attended by Gordon Birgbauer, Jr., then President of Lumber Jack

2

Building Centers, and was also attended by the sporting goods manager. Inspector Satkowiak reviewed the violations with them and explained the necessary corrective action to be taken. Mr. Birgbauer signed and acknowledged receipt of the ATF Forms 5030.5.

In July and August 2004, ATF Inspector Sandra Lecznar conducted a third compliance inspection. As a result of the inspection, Inspector Lecznar cited Petitioner for nine violations of the GCA and implementing regulations. The cited violations were as follows: (1) Failure to report the theft or loss of twelve firearms from the licensee's inventory within 48 hours after the theft or loss was discovered, (2) Failure to receive a certified copy of a transferee's license prior to the transfer of the firearm on at least two occasions, (3) Failure to contact NICS (National Instant Criminal Background Check System) on at least one occasion prior to the transfer of a firearm, (4) Failure to provide a Youth Handgun Safety Act Notice to a nonlicensee prior to the transfer of a handgun and failure to display at its licensed premises a Youth Handgun Safety Act Poster, (5) Failure to properly complete 200 ATF Forms 4473 prior to the transfer of a firearm, (6) Failure to verify the identity of five purchasers by examining an identification document and noting on the ATF Form 4473, the type of identification used, number, and expiration date, (7) Failure to post the address or license number from whom a firearm was received or disposed to, the date when received, and the type, in the A & D Record on at least 379 occasions, (8) Failure to record 146 firearm dispositions for which the licensee was unable to determine the dispositions of 75 firearms in the A & D Record and failure to post the dispositions in the A & D Record not later than seven days following the disposition, (9) Failure to record the transfer of a firearm to an unlicensed gunsmith on an ATF Form 4473. A.R. at 38-41, 225-227.

On January 31, 2006, a notice of revocation of license was issued. Petitioner filed a timely

3

request for an administrative hearing. On January 24, 2007, the administrative hearing was held. On February 16, 2007, the hearing officer issued a recommendation concurring with the Respondent's decision to revoke Petitioner's license on the basis that Petitioner willfully violated the GCA. The hearing officer's report agreed on most grounds, but, disagreed with Respondent on Counts III and IV of the Notice of Revocation. With regard to Count III, failure to conduct NICS check prior to transfer of a firearm, the hearing officer found that a single instance of such failure was an isolated occurrence, and that the government had failed to establish that such omission was willful. A.R. at 18. With regard to Count IV, failure to post the Youth Handgun Safety Act ("YHSA") sign, the hearing officer noted that the government failed to establish that Petitioner was aware of the YHSA requirements or that the violation was willful. On March 21, 2007, the Respondent issued a Final Notice of Revocation which was to become effective on May 31, 2007. On that same date, Respondent granted Petitioner's request to extend the final date of revocation to allow Petitioner to continue operating its business pending determination by this court. On May 21, 2007, Petitioner filed a timely Petition for judicial review. On September 14, 2007, Respondent's motion for summary judgment was filed. On January 28, 2008, oral arguments were held and the matter was taken under advisement.

## II.

### *Standard of Review*

*(a) Summary Judgment*

Summary Judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central

4

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

*(b) Judicial Review of the GCA*

The Attorney General "may, after notice and opportunity for hearing, revoke any license issued under this chapter or any rule or regulation prescribed by the Attorney General under this chapter. . . ." 18 U.S.C. §923(e). Upon revocation of a FFL, the licensee is entitled to an agency hearing. 18 U.S.C. §923(f)(2). If the decision to revoke is not reversed, the licensee may seek *de novo* review in the United States district court in which he resides or has his principal place of business. 18 U.S.C. §923(f)(3). The court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the administrative hearing. *Id*. The district court must determine whether the decision to revoke was "authorized." *Id*.

### III.

*Discussion*

Petitioner makes a number of arguments against Respondent's revocation of its FFL. However, for sake of brevity they may be summarized as follows: Petitioner's failure to comply with the regulations was not a "willful" violation of the law; and Respondent imposed standards for recording information in the A & D record and on the ATF Forms 4473 that goes beyond that which is imposed by statute.

Respondent contends that while Petitioner denies a number of the cited violations, Petitioner has also admitted to a number of other violations. During the 1995 compliance inspection, Petitioner was advised of several violations and the corrective action that needed to be taken. However, during

the 2004 inspection, of the nine violations cited, four of them were repeat violations for which Petitioner had been counseled and advised in 1995. Of the four repeat violations, the most significant violation was Petitioner's inability to account for 75 firearms that, according to Petitioner's records, entered its inventory, but for which there were no recorded dispositions and no Forms 4473. This was a repeat of the violation cited in 1995, when Petitioner could not account for twelve firearms, ten of which remained unaccounted for at the time of the 2004 inspection.

Pursuant to 18 U.S.C. §923(e), the government may revoke a firearms license if the dealer "willfully" violates a statute or regulation governing the firearm industry. See also *Appalachian Resources Development Corporation v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004). "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." *Id*. at 464. See *Al's Jewelry & Loan, Inc. v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, No. 95-1765, 1996 WL 683528 at *3-*4 (6th Cir. Nov 22, 1996)(denial of license affirmed upon finding petitioner willfully violated the GCA because he knew of record keeping obligations yet failed to abide by them); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980)("The [GCA] does not require bad purpose or evil motive before a license may be revoked or a renewal application denied. The Secretary need only prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record keeping requirements.")(quotation marks omitted).

In *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006), the court held that "when evaluating omissions alleged to be deliberate, it is often necessary to ascertain whether the failure to act

6

resulted from a conscious consideration of the legal requirement to act. . . .a court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." *Id*. at 321-322.

Petitioner argues that the ruling in *Appalachian Resources* was invalidated by the U.S. Supreme Court in *Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201 (2007). Petitioner contends that *Safeco's* definition of the term "willfully", when used in a statute creating civil liability, covers only knowing and reckless violations of a standard. *Id.* at 2208. The construction set forth in *Safeco* "reflects common law usage, which treated actions in 'reckless disregard' of the law as 'willful violations'. . . .[A]nd under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way. . . ." *Id.* at 2209.

While *Safeco* was defining "willfully" in the context of the Fair Credit Reporting Act, (hereinafter "FRCA") Petitioner argues that the definition should be applied universally, in the civil context, unless there is language in the statute "pointing another way."[1] Petitioner contends that "willfully" must be interpreted to mean conduct that is not the result of error, inadvertence, or negligence. Based on its reading of *Safeco*, Petitioner maintains that this court must find that Petitioner's actions were knowing or reckless, i.e., "an aggravated or extreme departure from standards of ordinary care" for those actions to be willful. Petitioner indicates that there is a genuine issue of material fact with respect to whether it acted willfully in that the evidence is either non-existent or conflicting, concerning whether Petitioner knew it was violating a statute or regulation

---

[1]This exact argument regarding the *Safeco* case was recently rejected in *Armalite , Inc. v. Lambert*, 512 F.Supp.2d 1070 (N.D. Ohio, 2007), where the court found that the holding in *Safeco* was not inconsistent with *Appalachian Resources* and that it was bound by the Sixth Circuit decision.

or did so recklessly. Petitioner asserts that trial is required to make such a determination.

This court finds that the definition of "willfully" set forth in *Appalachian Resources*, is still the prevailing definition to be followed in this circuit. The *Safeco* Court properly noted that "[w]e have said before that 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears'." *Safeco*, 127 S.Ct. at 2208. The Sixth Circuit specifically dealt with the meaning of "willfully" in the context of the GCA, and determined that "where a licensee understands his or her legal obligations under the GCA, but fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." *Appalachian Resources*, 387 F.3d at 464. This court is not persuaded that the *Safeco* Court intended for its interpretation of "willfully" to be used as expansively as Petitioner suggests. The *Safeco* Court was specifically evaluating the term as it should be applied and defined in accordance with the Fair Credit Reporting Act, such an interpretation was certainly appropriate in that context. *Appalachian Resources* and numerous subsequent cases have specifically dealt with the term "willfully" as it was used and defined by the GCA, that reading must be applied to the instant case.

As the Fourth Circuit held, "[W]hen determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions." *RSM, Inc.*, 466 F.3d at 321. As stated previously, "a court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." *Id*. at 321-322.

Petitioner has never contended that it did not know or understand its legal obligations under the GCA. In fact, Petitioner was a licensed firearms dealer for almost twenty years at the time of

the 2004 inspection. By that time Petitioner had participated in two prior compliance inspections, both of which resulted in Petitioner, at minimum, being counseled on the firearm laws and regulations and proper record keeping procedures. Despite the specific instruction given after the prior inspections, the 2004 inspection concluded with nine cited violations, four of which were repeat violations from the 1995 inspection, for which Petitioner had been counseled and advised on the appropriate corrective measures to be taken. Petitioner apparently did not implement any of the measures as each of the four violations cited in 1995 were again cited nine years later, during the 2004 inspection. This court agrees with Respondent's position that the most serious of those violations was the inability to account for 155 firearms at the inspection. In fact, it was only with the assistance of Inspector Lecznar that eighty of those firearms were discovered, however, at the conclusion of the inspection, seventy-five of the firearms remained unaccounted for. It should be noted that ten of the unaccounted for firearms were also unaccounted for at the 1995 inspection.

Petitioner acknowledged that in 1995, the ATF had provided Petitioner with the information it needed to correct the deficiencies in its record keeping, and the then manager, Birgbauer, indicated that he was embarrassed by the fact that Petitioner failed to implement the necessary corrective measures. A.R. at 232, 277-279. In the instant case, Petitioner was plainly indifferent to the legal requirements of 27 C.F.R. §478.125(e), when it failed to properly account for the whereabouts of seventy-five firearms. Petitioner clearly knew of its obligations under the GCA, however, it failed to implement the necessary changes and bring its record keeping practices into compliance with the law.

This court does not need to exhaustively address each of the alleged violations. It must merely determine whether even a single violation occurred which authorized the revocation of

9

Petitioner's license. As the Sixth Circuit stated, "a single violation is a sufficient basis for denying an application or revoking a firearms dealer's license." *Appalachian Resources*, 387 F.3d at 464. This court will not address each violation individually as Petitioner, in its Complaint and Response brief, has conceded the violation of several of the statutes and regulations. As an example, Petitioner conceded that it accepted firearms overnight for repair without recording the transaction in the A & D Record, "on a very few occasions." Compl. at ¶¶ 15, 17; Response brief p. 2-3.

Most importantly, Petitioner was cited in 1995 for being unable to account for twelve firearms that should have been in its inventory. However, in 2004, Petitioner again was unable to account for seventy-five firearms which purportedly entered its inventory but whose dispositions were not documented. It was not until after the inspection that Petitioner reported those firearms as lost or stolen. The foregoing conduct of Petitioner demonstrates it understood its legal obligations and was plainly indifferent to violating the federal gun control laws. In fact, while this court is not persuaded that the *Safeco* standard applies here, this court finds that that standard has also been met. Pursuant to the definition of "willfully" set forth in *Safeco*, this court finds that Petitioner willfully violated the GCA by *knowingly* violating various gun control statutes and regulations. It is undisputed that Petitioner was cited for four violations during the 1995 inspection. It is also undisputed that Petitioner was counseled regarding these violations and informed as to proper record keeping procedures. Despite the information available to Petitioner for more than nine years, the 2004 inspection yielded four repeat violations. One of which was the critical record keeping violation discussed above.

Petitioner's omissions in its record keeping have not decreased over time, they have significantly increased. It appears that Petitioner does not embrace the gravity of the responsibility

entrusted to it by initially granting it a FFL. Over the twenty years for which Petitioner had the privilege of selling firearms, their obvious indifference to proper record keeping has become more apparent. With each compliance inspection, Petitioner was given an opportunity to improve, but instead, Petitioner has apparently taken a less responsible attitude towards its duties.

As Respondent notes, citing *RSM, supra*, "[w]hen a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated." *RSM*, 466 F.3d at 324. As the court in *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 348 F. Supp. 2d 1299 (S.D. Ala. 2004) noted,

> [T]he gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance [with record keeping requirements] as a condition of retaining the privilege of dealing in firearms. Indeed, the Supreme Court has noted that one purpose of the Gun Control Act is "to keep firearms away from persons Congress classified as potentially irresponsible and dangerous." Where a dealer does not properly maintain ATF records to the agency's exact specifications, the ATF's ability to fulfill its legislative mandate may be compromised. If ever there were a statutory scheme where a licensee should be obligated to "sweat the details," irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill. (Citations omitted).

*Id*. at 1309 n. 14.

It is obvious that the requirements of the GCA and supporting regulations were intended to be stringently followed. Our society has been riddled with myriad violent crimes which inevitably stem from the use of illegal firearms. There are laws and regulations in place to track the inventory of those who sell such firearms to ensure that each and every firearm is accounted for at all times. Law enforcement officials must have such information at their disposal in order to effectively curb the illegal sale and use of these firearms. These laws are in place to "to keep firearms away from persons Congress classified as potentially irresponsible and dangerous." If there is no system of adequate record keeping and monitoring, this objective can never be achieved. The gun control

issue has been at the forefront of all local, regional, and national concerns for years. Guns have been the scourge of our cities and continue to cause violent crimes to increase exponentially. Our government must be in a position to take whatever steps are legally appropriate to monitor the sale and movement of these firearms. This cannot be accomplished without thorough records from those entrusted with the privilege of engaging in the commerce of firearms. They must be held to a high level of accountability. Being granted a Federal Firearms License is a privilege, not a right. In the instant case, Petitioner's privilege was properly revoked.

This court is convinced that Petitioner had undisputed knowledge of the law and willfully violated such laws and regulations. Respondent has established that no genuine issue of material fact exists and summary judgment must be granted.

Petitioner, in its response brief, raises numerous arguments that the Director lacked the authority to promulgate rules and regulations regarding record keeping requirements without affected parties being given an opportunity to comment on the requirements. This court will not reach the merits of such arguments as other willful violations of the GCA have already been substantiated, and a "single violation is a sufficient basis" to revoke Petitioner's license.

In sum, this court holds that Petitioner willfully violated the GCA, in violation of 18 U.S.C. §923(e), and supporting regulations and Respondent was completely authorized in revoking Petitioner's Federal Firearms License.

Based on the aforementioned, Respondent's motion for summary judgment must be granted.

**IV.**

For the reasons detailed above, Respondent is entitled to summary judgment and this case must be dismissed in its entirety.

Now, therefore,

IT IS ORDERED that Respondent's [d/e 12] motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the decision to revoke Petitioner's Federal Firearms License was AUTHORIZED, Respondent's Final Notice of Revocation issued on March 21, 2007, is hereby AFFIRMED and Respondent's Federal Firearms License is hereby REVOKED.

**IT IS SO ORDERED**.

DATED: March 4, 2008
                **s/Anna Diggs Taylor**
                ANNA DIGGS TAYLOR
                UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 4, 2008.

                s/Johnetta M. Curry-Williams
                Case Manager